

2049 CENTURY PARK EAST
SUITE 3400
LOS ANGELES, CA 90067

310 552 0130 TEL
310 229 5800 FAX
ROBINSKAPLAN.COM

DAVID MARTINEZ
310 552 0130
DMARTINEZ@ROBINSKAPLAN.COM

*Via ECF*

October 29, 2021

Chief Magistrate Judge Joseph C. Spero
U.S.D.C. - NORTHERN DISTRICT OF CALIFORNIA
San Francisco Courthouse, Courtroom F – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Kelley, et al. v. AW Distributing, Inc., et al., Case No. 4:20-cv-06942-JSW*

Dear Magistrate Judge Spero:

Plaintiffs Brian Kelley, Robin Kelley, J.O., Judy Schneider and Troy Olver ("Plaintiffs") and AW Distributing, Inc. ("AWD"), AW Product Sales & Marketing, Inc., AW & HO (Holdings), Inc. ("AW Holdings"), Kennic Ho and Alice Ho (the "AW Defendants") submit this Joint Letter Brief regarding outstanding discovery disputes related to the AW Defendants' responses to Plaintiffs' February 26, 2021 Requests for Production ("RFPs") and Interrogatories.

I. **PLAINTIFFS' STATEMENT**

Plaintiffs' claims arise out of the deaths of a mother and two children caused when a man driving high on the AW Defendants' Ultra Duster foreseeably drove his truck off the road and into a group of girl scouts and their parents. Plaintiffs allege that the AW Defendants knew about the dangers of intentional inhalation of dust remover spray containing Difluoroethane ("DFE") since 2008 and knew that a bitterant designed to prevent abuse was ineffective, yet have failed to take any action and continue to sell to this day.

Plaintiffs propounded discovery on the AW Defendants on February 26 and have engaged in extensive efforts to obtain basic information over the last 8 months.[1] The AW Defendants did not make their first ESI email production until October 13, did not agree to search eight relevant AWD accounts until October 26, and have declined to provide a date certain for completion of the production. They have declined to provide documents and/or information relevant to Plaintiffs' alter ego claims, contracts regarding downstream retailers, sales and profits, and certain documents and information related to an OEM generic version of Ultra Duster. Plaintiffs respectfully request that the Court order the AW Defendants to provide this information and complete their production by November 30, 2021.

---

[1] By way of example, the AW Defendants ignored our meet and confer requests pursuant to this Court's July 1 Order (requiring a conference within 10 days), and agreed to confer only after we threatened to bring a motion to compel compliance with the Court's Order to confer. Dkt. 119.

61860520.1

A. **Documents Related to Plaintiffs' Alter Ego Allegations**

Plaintiffs set forth alter ego allegations against the AW Defendants. (FAC, at ¶¶ 20-32). RFP 9 seeks documents relating to the transfer of assets and/or funds amongst the AW Defendants. This request encompasses the use by Mr. and Mrs. Ho of corporate accounts for payment of personal expenses, loan documents and inter-corporate transfer contracts. The AW Defendants object on relevancy, burden, proportionality, and privacy grounds. Plaintiffs proposed several compromises, including limiting the production to documents showing transfers from 2012 through the present (AW Holdings was formed in 2012 for the purpose of holding the AW Defendants' property) and excluding transfers between Mr. and Mrs. Ho below $5,000. On October 26, the AW Defendants acknowledged the existence of multiple transfers, including pursuant to loan agreements and intra-corporate agreements, but have never identified the volume or amount of transfers, the volume of responsive documents or the burden of reviewing or producing them.

RFP 11 seeks communications regarding Defendant Mr. Ho's guarantee of a settlement payment in a contract dispute between AWD and Defendant Daiho Sangyo, Inc. ("Daiho"). (FAC ¶ 30). The AW Defendants refuse to identify the settlement payor on privacy and relevancy grounds.

The AW Defendants' objection that Plaintiffs' alter ego allegations are supposedly conclusory fails for multiple, independent reasons and does not excuse their refusal to produce alter ego discovery. It is axiomatic that "The allegations in a complaint generally dictate what evidence is discoverable." *Scherer v. FCA US, LLC*, No. 20-CV-2009-AJB (BLM), 2021 WL 1921119, at *2 (S.D. Cal. May 12, 2021) (collecting cases). It is equally well settled that "[d]iscovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient." *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 479 (N.D. Ind. 2009) (quoting *Alexander v. F.B.I.*, 194 F.R.D. 316, 326 (D.D.C. 2000) (quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2008 (2d ed. 1994)). The AW Defendants <u>did not</u> move to dismiss the alter ego claims. They <u>did</u> move to dismiss the identical alter ego allegations in another Ultra Duster catastrophic injury case, and Judge Nancy E. Brasel denied the motion on April 23, 2021. *See Chairez v. AW Distributing et al.*, No.: 20-CV-01473 (NEB/TNL) (D. Minn.) at Dkt. 46.

Transfers between the AW Defendants, including use of corporate funds for personal reasons, and the identity of the Payor of the Daiho Settlement, are relevant to many alter ego factors, including undercapitalization, fraudulent transfers, insolvency, diversion of funds, payment by corporation of non-corporate debts or expenses, "commingling of funds, failure to segregate funds of the separate entities…the holding out by an individual that he is personally liable for the debts of the corporation…[and] equitable owners [of the corporation] with the domination and control of the [] entities." *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811 (2010); *see also Starline Windows Inc. v. Quanex Bldg. Prod. Corp.*, No. 15-CV-1282-L (WVG), 2016 WL 4485561, *3 (S.D. Cal. June 21, 2016) (alter ego discovery proper given alter ego allegations and noting that the issue before the Court was a "discovery dispute," not a motion to dismiss); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, CV 14-3053-MWF (VBKx), 2015 WL 12781594, *4 (C.D.Cal. Feb. 12, 2015) (rejecting argument that alter ego discovery was overbroad because underlying ERISA claim "will fail"); *Hess v. Biomet, Inc.*, No.

3:16-cv-208-JD-MGG, 2018 WL 10579554, *4 (N.D. Ind. Mar. 7, 2018) (alter ego discovery proper given allegations); *Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. C 01-21151 JW, 2008 WL 4858502, at *4-5 (N.D. Cal. Nov. 10, 2008) (same). The presence of potential insurance if irrelevant, in particular given the number of pending cases and the deaths and catastrophic injuries at issue.

The AW Defendants have made no specific showing of burden, let alone an evidentiary showing. Defendants have failed to do so over the last eight months, relying instead on a meaningless statement on October 26 that there are nine (9) bank accounts at issue, but failing to identify the volume of transfers or responsive documents, or any actual burden of review. *Farber and Partners, Inc. v. Garber*, 234 F.R.D 186, 188 (C.D. Cal. 2006) (collecting cases); *Vargas v. Cty. of Los Angeles*, No. CV 19-3279 PSG (ASX), 2020 WL 4032671, at *3 (C.D. Cal. May 11, 2020) (party must "submit[] affidavits or other evidence" of burden); *Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*, No. CV 16-00300 CJC (RAOx) 2017 WL 3275615, at *6 (C.D. Cal. Feb. 14, 2017) (rejecting proportionality argument given failure to submit "any evidentiary declaration to support this objection").

The proportionality factors nevertheless favor disclosure: (1) at issue are the wrongful deaths of three people; (2) the magnitude of loss is staggering; (3) the AW Defendants have access to their financial information and Plaintiffs do not; (4) the AW individual Defendants are wealthy (FAC ¶ 29); (5) the subject discovery is highly relevant to alter ego; and (6) the burden or expense does not outweigh the likely benefit, as the AW Defendants have not articulated any burden, and these records are already in their possession, or readily available through financial institutions.

The AW Defendants' privacy objections are also meritless given the governing Protective Order, the relevance of this information to the alter ego claims, and the absence of other sources for the information. *L B Sheet 1, LLC v. Loskutoff*, No. 16-cv-02349-BLF, 2016 WL 7451632, *1-3 (N.D. Cal. Dec. 28, 2016) (ordering disclosure of defendant's financial records relevant to punitive damage over privacy objections given protective order); *Del Campo v. Am. Corrective*, 2008 WL 4858502, at *1 (compelling production of alter ego financial information given protective order; and collecting cases); *Cervantes v. CEMEX, Inc.*, No. 1:12-cv-1932-LJO-JLT, 2014 WL 4104200, *10 (E.D. Ca. Aug. 18, 2014) (rejecting privacy objections regarding non-party employee records because protective order "is sufficient to address the confidentiality of the records."); *McClure v. Prisoner Transp. Servs. Of Am., LLC*, No. 1:18-cv-00176-DAD-SKO, 2020 WL 1182653, *4 (E.D. Cal. Mar. 12, 2020) (ordering disclosure of financial information over privacy objections); *Frazier v. Bed Bath & Beyond, Inc.*, No. 11-mc-80270 RS (NC), 2011 WL 5854601, *2 (C.D. Cal. Nov. 21, 2011) (granting motion to compel because privacy interest adequately protected through protective order); *Soto v. City of Concord*, 162 F.R.D. 603, 617 (N.D. Cal. 1995) (same).

### B. Contracts and Agreements, Including Regarding the AW Defendants' Downstream Retailers

RFP 12 seeks the production of "all contracts or agreements relating to Ultra Duster or Similar Products." The AW Defendants' only "similar product" is an OEM version of Ultra Duster identical to Ultra Duster (hereinafter "OEM Version"). The AW Defendants responded to

RFP 12 by stating only that "AWD's contract with Daiho Sangyo and AWD's supplier agreement with Walmart were previously produced." <u>The AW Defendants never objected to RFP 12, and it is axiomatic that all purported objections are waived</u>. The Court should therefore compel the production of all contracts or agreements relating to Ultra Duster and the OEM Version from 2008 (when Defendants started sourcing) through 2021 (with the exception of supplier information, which may be redacted by agreement).

To the extent that Defendants may seek to assert untimely objections based on relevancy, trade secret or privacy, none would have any merit. The identity of AW Defendants' retail customers is relevant to identifying the breadth of their distribution network, their motivation to continue selling, the number of people likely to be affected by misuse, efforts to avoid creating a public nuisance, age and lock-up restrictions, representations about product safety, testing and efficacy of the bitterant, knowledge of sales in areas more susceptible to abuse, and the identification of potential witnesses. *See, e.g., City and County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 632 (N.D. Cal. 2020) (distribution of product in quantities not used for legitimate purposes could support a public nuisance claim).

Any trade secret objection is meritless because the Protective Order in this case already "protect[s] confidential, proprietary, financial, and technical information from improper public disclosure." *Jones v. Amicizia Events, Inc.*, No. CV 19-8181 DMG, 2020 WL 6065927, at *2 (C.D. Cal. Apr. 3, 2020). That would be the case even if the parties were competitors, which they obviously are not. Any privacy objections would also be meritless, as Plaintiffs are not seeking disclosure of individual buyers. Further, the identity of retail customers (who publicly sold or sell Ultra Duster or the OEM version) cannot possibly be subject to privacy, and the Protective Order would adequately protect any such interest in any event. *See, supra*, Section I.B.

C. **Documents Related To Pricing and Financials**

RFP 38 seeks documents and communications related to pricing of Ultra Duster and the OEM Version. The AW Defendants object <u>exclusively on trade secret grounds</u>. This objection is meritless given the Protective Order, as outlined above. As such, the AW Defendants should produce all responsive documents dating back to 2011. Pricing documents are also responsive to RFP 12, as to which all objections are waived. *See, supra*, Section I.B.

RFP 39 seeks documents and communications that show sales, revenues, variable costs and profitability of Ultra Duster and the OEM Version. Defendants object on the basis of relevance, burden (claiming that they would be required to aggregate information) and trade secret. Plaintiffs offered to compromise by limiting this request to documents sufficient to show how the AW Defendants determined pricing, the per unit average sales price per month, and annual profits dating back to 2011. The trade secret objection is meritless as set forth above. As to burden, to the extent that they are required to aggregate anything (which we dispute, as we request the production of documents as kept in the ordinary course), Defendants should be required to produce all responsive documents, which will eliminate any alleged aggregation burden. Further, the AW Defendants' claim that they do not have documents showing "actual sales" does not excuse them from producing responsive documents.

Finally, responsive documents are relevant to the AW Defendants' financial motivation to sell defective products despite knowing the risk, the number of affected consumers, whether

margins left room for spending on safety enhancements, whether profitability is volume-driven, and the AW Defendants' financial condition. *See e.g.* FAC, at ¶¶ 202-208; Prayer, at ¶6; Civ. Code, § 3294; *Cunningham*, 255 F.R.D. at 478-79 (defendant's revenue and profit information relevant and discoverable); *Sheet 1, LLC v. Loskutoff*, 2016 WL 7451632, *1-3 (ordering disclosure of an "accounting of profits, income, losses, and expenses" over privacy objections); *Vieste, LLC v. Hill Redwood Dev.*, No. C-09-04024 JSW, 2011 WL 855831, at *1 (N.D. Cal. Mar. 9, 2011) (discovery of profits information "is clearly relevant to the issue of punitive damages.").

### D.　Documents and Information Related to the OEM Version

As stated above, the Court should compel the AW Defendants to produce documents responsive to RFPs 12, 38 and 39, including regarding the OEM Version. It should also compel the AW Defendants to respond to Interrogatory 18, which asks that they identify the total number of units of the OEM Version sold by year. Defendants did not object to Interrogatory 18, and all objections are waived.

As noted, the AW Defendants sell a generic OEM Version of Ultra Duster. Plaintiffs propounded several RFPs and Interrogatories seeking information about the EOM Version.[2] Defendants did not object to the vast majority of these requests. Discovery on the OEM Version is relevant to (1) the presence of DFE; (2) the lack of an effective deterrent and sales restrictions; (3) alternative designs; (4) misuse; and (5) Defendants' knowledge. *See, e.g., Barcenas v. Ford Motor Co.*, No. C03-04644RMWE, 2004 WL 2827249, *3 (N.D. Cal. Dec. 9, 2004) (collecting numerous cases holding that "discovery of similar, if not identical, models is routinely permitted in product liability cases.").

The Court previously issued an order limiting Walmart's production on similar products to injuries only, and stating that the "date range for the production by Walmart is limited to 2013 to present." Dkt. 136 (the "Walmart Order"). The Walmart Order was premised on proportionality based on Walmart's statements in a letter brief that it would be required to review 140,000 documents entailing 2,800 review hours on Ultra Duster alone, and intimating that the number could be ten-fold if similar products were included. Dkt. 126, at pgs. 6-8. The AW Defendants have not asserted similar objections, nor have they made any evidentiary showing through competent declarations. And in any event they have failed to object and waived objections (RPD 12; Interrogatory 18), or asserted baseless trade secret objections, but not burden (RFP 38).

### E.　ESI from Other Custodial Email Addresses

On October 13, 2021, the AW Defendants produced documents from two email addresses: kennicho@awdus.com and customerservice@awdus.com. On October 26, they agreed to search eight additional AWD email accounts, but as of October 28, they declined to provide any timeline for production. Plaintiffs request that the Court Order the AW Defendants to complete the production by November 30, 2021.

---

[2] The AW Defendants have stated that they are not withholding and will not withhold any documents regarding the OEM Version except as to the discovery items at issue here.

### F.     Documents from Prior Litigation

The AW Defendants agreed to and produced documents from prior litigation against it related to Ultra Duster. However, a substantial amount of documents, including deposition exhibits and document productions, are missing. The AW Defendants' counsel advised that defense counsel in the prior litigation was unresponsive, and agreed to send a letter requesting missing documents. On October 28, counsel advised that it had contacted prior defense counsel that morning, but did not advise on the scope of materials requested or a timeline for production. Plaintiffs respectfully request that the Court Order the AW Defendants to do so and to produce all responsive documents by November 30.

## II.     The AW Defendants' Statement

AW Defendants' portion of the parties' Joint Letter regarding discovery issues is below.

The parties dispute the following issues: (1) the discovery of financial records of AW defendants, Kennic Ho and Alice Ho, (2) retailer identity (other than party defendant Walmart), (3) AWD's profits from sale of Ultra Duster, (4) how AWD prices Ultra Duster for sale and distribution, (5) payor document pertaining to a 2018 contract dispute settlement between AWD and party defendant Daiho Sangyo, and (6) discovery related to the OEM version of Ultra Duster.

### a.     Alter Ego: Plaintiffs Are *Not* Entitled to Discovery of Defendants' Financial Records, or Payor Document Relating to 2018 Contract Dispute Settlement

Defendants address items (1) and (5) in this section.

(1) Financial Records

Plaintiffs' Request for Production No. 8 seeks "[a]ll Documents and Communications relating to the transfer of assets and/or funds amongst and between AW Distributing, Inc. (AWD), AW Product Sales & Marketing, Inc., (AWP) AW & HO (Holdings), Inc., (AWH) Kennic Ho, and Alice Ho." Plaintiffs are not so entitled. Defendants objected and withheld documents on grounds, *inter alia*:

- outside the scope of discovery – the request is neither proportional to plaintiffs' needs, nor does it bear on any issues of liability making it outside the scope of discovery. *Plaintiffs have not proposed any reasonable limitation of this request.*

By way of background, AWD, formed in 2007, imports and distributes the product (Ultra Duster), as well as several other unrelated products. AWP formed in 2011 promotes, advertises and supports sales of the product. AWH formed in 2012 is a real estate investment company which has no involvement whatsoever with the product. Alice Ho is a majority owner of AWD, which in turn is a majority owner of AWP and AWH. Kennic and Alice Ho hold officer and director positions in the three companies.

Plaintiffs First Amended Complaint (FAC) contains bare and conclusory allegations that the five AW defendants- three corporations and two individuals- are engaged in a joint venture, are undercapitalized, failed to observe corporate formalities, commingled assets and funds and

61860520.1

used AWH to shield corporate assets, and that observing the separateness of these entities would sanction a fraud and injustice(FAC 26-32).AWD has $5million of products liability insurance and is an additional named insured in the $10 million products liability policy of its supplier, defendant Daiho Sangyo. In addition the presence of defendant Walmart in this matter militates against any apprehension that plaintiffs would be left uncompensated should they prevail.

AW defendants have produced these insurance policies as well as all their corporate minutes, stock certificates and statements of information filed with the Secretary of State.

In response to AW Defendants interrogatories as to the factual basis upon which plaintiffs make these allegations, plaintiffs have objected on grounds that the information is within defendants' possession and then refers defendants to "filings by the parties and documents produced". Clearly plaintiffs have no basis for these allegations and are hoping to find support in defendants' financial records. Plaintiffs' allegations do not meet any kind of threshold test justifying broad and invasive alter ego discovery in a non-jurisdictional setting. *See NML Capital ltd v Republic of Argentina* U.S Dist Ct. N.D. Cal 12-MC-80185- JSW (2015) at pp 4-7; *Campo v American Corrective Counselling Service* C-01-21151 JW (2008) at pp. 5-6.

The request as written imposes a real and unjustified burden on Defendants. As defendants have advised it would require Defendants to scour up to 14 years of financial records involving nine (9) separate bank accounts when defendants do not have easy access to these records and most, if not all, of the transactions are "in the ordinary course of business" since the 3 corporate entities *are operated as separate entities* and the Hos are entitled to compensation for their efforts and financial privacy as to the amount of their compensation. The drain on the parties' resources far outweighs any probative benefit at this stage. Indeed, alter ego is itself not a cause of action, but a vehicle to attach liability *should some injustice result from adhering to the presumption of separate identities.*

Defendants have requested that plaintiffs propose limited requests targeted to discover evidence of the financial relationship among the AW corporate defendants and their allegations that the AW defendants are shielding assets in AWH.

(2) <u>Payor re Daiho 2018 Settlement</u>

Defendants objected to the disclosure of documents showing the payor of the 2018 settlement payment of a contract dispute between AWD and Daiho Sangyo on grounds that contract dispute has nothing to do with the issues in this case. AWD has agreed to produce settlement communications between counsel for AWD and Daiho related to the settlement as a compromise position. Plaintiffs are in possession of the settlement agreement, which provides for payment by AWD, and if not paid by AWD, as agreed, then by the Hos.

b. **Plaintiffs Are *Not* Entitled to the Identities of AWD's Other Retail Customers Besides Walmart**

Defendants address item (2) in this section. Plaintiffs seek various categories of information bearing on, *inter alia*, the identity of AWD's retail customers. AWD objected and withheld that information primarily on grounds that information is the result of trade secrets and is otherwise confidential by non-disclosure agreements with these entities. The identity of

other retail customers, other than Walmart, is also not relevant to any of the claims at-issue and therefore exceeds the scope of discovery. Plaintiffs do not need this information to make their case. In contrast, disclosing that information, e.g. supplier agreements with those entities, risks harm to AWD's business. AWD acquired agreements to supply retail entities as a result of AWD's particularized knowledge of supply chain management, sourcing, and competitively valuable knowledge of the marketplace for products such as Ultra Duster. Thus, Plaintiffs are not entitled to this information.

### c. Pricing Methods and Profitability

Defendants address item (4) in this section. Plaintiffs seek discovery of documents and communications related to entire history of Ultra Duster pricing and profitability. Namely, Plaintiffs want to know how AWD formulates the price of Ultra Duster, per unit, as well as variable costs, margin and profitability of Ultra Duster and other "similar products" (i.e. OEM generic canned dust sprays). Plaintiffs are not entitled to this information because it exceeds the scope of discovery. First, how AWD derives the sale price of Ultra Duster is confidential trade secret information. There is no dispute that multiple companies occupy the market for canned dust cleaners. How AWD formulates product pricing is derived from, *inter alia*, competitively valuable knowledge gained from years of AWD's investment, marketing, and experience. Disclosure of this information poses a risk of harm to AWD's business. Second, how AWD formulates product pricing, variable costs of the product, the margin and profit of the product is not at-issue. Plaintiffs do not need this information to prove their case. Third, producing such information poses a significant burden to AWD; i.e., the request seeks the entire history – a 14 year period – of Ultra Duster pricing, et cetera, information which AWD does not readily maintain in a central location. AWD would be forced to recreate that information from other sources which may no longer exist.

Defendants produced, and will continue to produce, ESI collected from July of this year which include order confirmation forms reflecting the unit price of Ultra Duster. As for "similar products", or what can be referred to as OEM label dust sprays, this case involves Ultra Duster, not an OEM product. The pricing, cost variability, and so on of OEM products are not relevant.

When requested, plaintiffs have been unable to provide any authority for the proposition that a products liability plaintiff is entitled to discovery into a defendant seller's pricing and profit structure. The only response given as to relevance was that the discovery goes to "motivation", presumably to make a profit. That explanation does nothing more than beg the question.

### d. OEM Product

The OEM version of Ultra Duster is not at-issue in this case and is therefore not relevant to the issues in dispute. Therefore, further discovery of OEM canned dust spray product exceeds the scope of discovery, e.g., plaintiffs cannot demonstrate this information is needed to prove their claims. In any event, AWD has answered in its responses, and represented to Plaintiffs during meet and confer discussions, that the OEM labeled canned dust sprays are the same product specification as Ultra Duster.

Chief Magistrate Judge Joseph C. Spero							Via ECF
Page 9

> By: _/s/ David Martinez_
> David Martinez
> Counsel for Plaintiffs
>
> By: _/s/ Philip Downs_
> Philip Downs
> Counsel for the AW
> Defendants except
> AW & HO (Holdings), Inc.
>
> By: _/s/ Steven Finley_
> Steven Finley
> Counsel AW & HO
> (Holdings), Inc.

**Signature Attestation**

In compliance with Civil Local Rule 5-1, the filer attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Executed this 29th day of October 2021, at Los Angeles, California.

> By: _/s/ David Martinez_
> David Martinez