

2049 CENTURY PARK EAST
SUITE 3400
LOS ANGELES, CA  90067

310 552 0130 TEL
310 229 5800 FAX
ROBINSKAPLAN.COM

DAVID MARTINEZ
310 552 0130
DMARTINEZ@ROBINSKAPLAN.COM

*Via ECF*

January 18, 2022

Chief Magistrate Judge Joseph C. Spero
U.S.D.C. - NORTHERN DISTRICT OF CALIFORNIA
San Francisco Courthouse, Courtroom F – 15th Floor
450 Golden Gate Avenue
San Francisco, CA  94102

Re:   *Kelley, et al. v. AW Distributing, Inc., et al., Case No. 4:20-cv-06942-JSW*

Dear Magistrate Judge Spero:

Plaintiffs Brian Kelley, Robin Kelley, J.O., Judy Schneider and Troy Olver ("Plaintiffs") and AW Distributing, Inc. ("AWD"), AW Product Sales & Marketing, Inc. ("AWM"), AW & HO (Holdings), Inc. ("AW Holdings"), Kennic Ho and Alice Ho (the "AW Defendants") submit this Joint Letter Brief Motion to Compel Compliance with Court December 3, 2021 Order re Plaintiffs' February 26, 2021 Requests for Production ("RFPs") and Interrogatories.

I.  **PLAINTIFFS' STATEMENT**

Plaintiffs' claims arise out of the deaths of a mother and two children caused when a man driving high on the AW Defendants' Ultra Duster ("UD") foreseeably drove his truck off the road and into a group of Girl Scouts and their parents.  Plaintiffs allege that the AW Defendants knew about the dangers of intentional inhalation of dust remover spray containing Difluoroethane ("DFE") since 2008 and knew that a bitterant designed to prevent abuse was ineffective, yet have failed to take any action and continue to sell to this day.

Plaintiffs propounded discovery on the AW Defendants on February 26, 2021 and have engaged in extensive efforts to obtain basic information over the last 10 months, culminating in the Court's December 3, 2021 Discovery Order, which compelled AW to produce documents and/or information regarding:  (1) "profitability, sales volumes, margins and costs on UD and the OEM version"; (2) alter ego; (3) discovery from eight custodial AW Defendant email addresses; (4) injuries; and (5) documents from prior litigation ("Greico").  ECF 155.

As was the case before the December 3, 2021 Order, Plaintiffs have since encountered more of the same chronic delay and obfuscation. Defendants have disregarded the Order to produce certain documents by December 3. They disregarded the Order to confer regarding scope, forcing Plaintiffs to obtain administrative relief to compel the AW Defendants to do what the Court had already ordered.  *See* ECF 160, 160-1 and 164.  Plaintiffs have now brought three motions on the same subject.  Defendants' argument that Plaintiffs are seeking to informally expand discovery lacks merit.  Plaintiffs wish to complete discovery as efficiently as possible consistent with the Court's December 3 Order, and thus seek the relief outlined below.

92396560.1

**A.   The AW Defendants Have Failed to Search for or Produce Documents from Eight ESI Custodial Addresses (Ordered by January 2), Documents from Prior Litigation (Ordered by January 2) or/and any OEM Injury Related Documents**

When Plaintiffs moved to compel on October 29 (ECF 149) (eight months after propounding written discovery), the AW Defendants had searched exactly two (2) email addresses, even though they knew that eight (8) others existed. On December 3, the Court ordered Defendants to search these custodial accounts and produce documents no later than January 2. ECF 155. As of January 14, the AW Defendants had not yet scheduled collection until January 19, with no date certain for production. Respectfully, this is brazen contempt. It warrants sanctions.

The AW Defendants similarly have not produced Greico documents also due on January 2, even though they admittedly received them from Florida counsel no later than December 27. Finally, the AW Defendants have not produced any OEM injury documents (the Court did not impose a deadline). Counsel informed on January 14 that they are searching for OEM injury documents and would produce them at some undetermined time. This is unacceptable, where discovery has been pending for 11 months. Plaintiffs respectfully request that the Court order production of all of these documents within 14 days, and grant Plaintiffs leave to seek sanctions, including fees incurred in having to bring now three motions. *Cf.* ECF 149, 160.

**B.   The Court Should Compel the AW Defendants to Produce Documents Sufficient to Show Sales and Profits from 2013-2019**

On January 13, the AW Defendants stated that "Sales volumes, costs and margins may be derived from the bank statements and tax returns" produced in connection with alter ego discovery. This is more obfuscation. These high-level documents include non-DFE products, and would not show sales volumes, costs and margins of UD and the OEM. At best, they would show payments made to Walmart and annual company-wide profitability. On January 14, Defendants agreed to produce purchase orders and invoices to the extent they exist. Plaintiffs request that the Court order the production of documents sufficient to show sales volumes of UD and the OEM version and of margins, prices paid to its suppliers Daiho and ZLT and charged to customers. If the documents are sparse, all should be produced so Plaintiffs can determine profitability. If they have been deleted, Defendants should amend responses to so state.

The parties have a dispute over the time period. Having conferred with counsel on January 14, Plaintiffs respectfully request documents <u>from 2013-2019</u> for several reasons. Unlike alter ego discovery, the Court did not recommend a 3-5 year period for profitability. ECF 160-1 (December 3, 2021 Transcript), at 28:20-21; 35:17-20; *cf., id*., at 29:14-19 (no express time limit on profits). The Court's reasoning regarding a short alter ego time period seemingly does not apply to profits, where a longer look back is directly tied to motivation and punitive damages.[1] And, in connection with the Walmart dispute, the Court allowed profits discovery from 2013 through the present. ECF 136, at Nos. 4 & 6. It makes sense to correlate AW profits with Walmart profits.

---

[1] *Id.*, at 29:14-19 ("On the pricing method and profitability, profitability is relevant. It's relevant to motivation. It's relevant to punitive damages. So my tentative thought is that you need to provide sales volumes, margins, costs, things that show what you made from these products. You can negotiate a reasonable scope for a period of some period of years.").

92396560.1

Further, Plaintiffs' tentative agreement to a four-year period was designed to avoid further delay and made expressly subject to seeking an additional three years from Your Honor.[2] Finally, there is no undue burden associated with providing information from 2013-2019. The AW Defendants have already acknowledged in discovery that they estimate selling "in excess of" 20 million units of UD to Walmart since 2013. Response to Interr. No. 18 (8-12-2021). Plaintiffs seek documents sufficient to show prices paid to Daiho and charged to Walmart as to UD, and documents sufficient to show volume and prices paid and charged as to the OEM version. If the Court is not inclined to allow this limited production from <u>2013-2019</u>, Plaintiffs respectfully request that it set the time period from <u>2016-2019</u>.

        **C.**       **The Court Should Compel the Production of Financial Statements from 2017-2020 and Other Documents from December 14, 2017 – December 14, 2021**

The parties have agreed to four years. The specific four-year period requested is set forth below. They have a dispute on alter ego scope. On December 3, the Court ordered "alter ego discovery against all of the … defendants, including bank records and other detailed records for a limited period of time." ECF 155. The transcript similarly reflects the Court's inclination to allow financial health discovery. ECF 160-1 (December 3, 2021 Transcript), at 35:15-21; 38:20-25. The underlying request itself broadly calls for all documents and communications related to transfers of assets or funds.

On January 13, 2022, some 41 days after the December 3 Order, the AW Defendants for the first time disclosed (in an email) what they intend to produce: (1) bank account statements; (2) transfer or loan agreements, <u>if any</u>; (3) property transfers, <u>if any</u>; (4) Form 1120 profit and loss statements. On January 14, 2022 (having secured a four-year period in December and having the benefit of knowing what documents exist), counsel declined to discuss any other documents. On January 18, shortly before this brief was due, counsel emailed stating that the corporate Defendants do not have <u>quarterly</u> financial statements, but would produce certain portions of tax returns showing profits and losses ("P&L") and balance sheets.

Plaintiffs did not request tax returns during the meet and confer process. We did request financial statements (which consist of P&L, balance sheets and cash flow statements). These documents relate to and evidence transfers and speak directly to Defendants' financial health. Any legitimate corporation would keep them. They had to be created to generate Forms 1120. Plaintiffs thus request that the Court order the production of full year financial statements from <u>2017-2020</u> (they apparently do not yet exist for 2021) and the other records that Plaintiffs agreed to from <u>December 15, 2017 through December 14, 2021</u>. To the extent that annual financial statements do not exist, Plaintiffs accept Defendants' offer to produce Forms 1120, but they should be complete and without redactions, as the forms and schedules are interrelated and need to be read together. Plaintiffs further request documents sufficient to show the use of corporate funds for personal use (comingling), as outlined in the motion to compel. ECF 149, at 2:3-4.

---

[2] ECF 160-1, at 15 (Dec. 16 email) ("Regarding the time frame, the Court did not limit profits/margins/sales data to 3-5 years. It previously limited it to 2013-present."); *id.*, at 13 (Dec. 21 email) ("We reserve rights to seek an additional time period as per your invitation. Please provide a time to confer on this additional time period …."); ECF 160, at 4:11-12 ("On December 21, to avoid further delay, Plaintiffs <u>tentatively agreed</u> to the AW Defendants' four-year time period … subject to revisiting if necessary as per agreement") (emphasis added).

Chief Magistrate Judge Joseph C. Spero *Via ECF*
Page 4

II. **DEFENDANTS' STATEMENT**

The parties have agreed to limit discovery to specific 4-year periods regarding (A) alter ego and (B) product profitability- margins, sales volumes and costs, respectively. Subject to those time periods previously specified by plaintiffs, AW Defendants agreed to produce the following:

1. All bank statements for each defendant
2. Annual profit and loss statements (IRS Form 1120 statements)
3. All purchase order information in their possession for Ultra Duster and OEM dust sprays by AWD and/or AWP to up-stream suppliers

Regarding category (A), AW defendants will produce <u>all</u> bank records for the agreed upon time-period and supplement their written response to RFP No. 9, pursuant to the federal rules. To be clear, RFP No. 9 sought all documents and communications related to "transfers of assets and/or funds amongst and between" the AW Defendants. Here, the parties have agreed to a limited, four-year time-period. AW Defendants believe that producing all bank records for that period for each of the AW Defendants is a reasonable scope of production: (1) bank transactions will show all incoming and outgoing cash flows, including any capitalizations, as well as any transfers beteween defendants; and, (2) providing all bank records ensures a comprehensive record from which revenues and costs can be extrapolated.

Importantly, Plaintiffs have since propounded further alter ego and profitability related requests seeking more specific categories of documents over an 8 year period. AW Defendants will respond to those requests accordingly, but, as reflected in the court's Order (ECF 164 at21-23), they are separate and distinct from the issues before the Court in this dispute.

Regarding category (B) documents, there is agreement between the parties as to the relevant 4-year period. AW Defendants believe a reasonable scope of production includes the following:

1. Annualized profit and loss records
2. Upstream purchase order records
3. Downstream sales records (via payments to AWD and AWP as reflected in the bank statements).

First, as defendants have advised plaintiffs' counsel, AWP and AWD do not have periodic (monthly or quarterly) profit and loss or financial statements; nor profit and loss analysis of individual products. Instead, these companies calculate profit or loss on an annual, aggregated basis as part of their tax returns. AWD and AWP will produce their annualized Form 1120s, which reflect the profitability of the companies. These portions of the tax returns will be produced for the agreed upon period as well as AWD and AWP's bank statements from which the profit or loss is calculated. The combination of both categories of records will allow plaintiffs to engage expert witness assistance to assess the profitability of the companies.

The annual profit or loss for AWD and AWP represents incoming revenue and outgoing costs for all products distributed by these companies, including Ultra Duster and OEM dusting spray product. Profit, margin, and variable costs are not recorded or tracked on a product-by-product basis, and so while AWD and AWP have no objection to, e.g., "variable costs" as a

92396560.1

category, there are no such responsive documents. Thus, how much profit, or loss, is attributable to dusting spray product is a matter for expert opinion, i.e., forensic accounting, derived from reviewing tax and bank statements documents.

Also, as to category (B) documents, Plaintiffs seek copies of downstream purchase orders from Walmart to AWD and AWP for Ultra Duster and OEM dusting spray. AW Defendants do not object to this category of request. AWD and AWP do not have possession custody or control of Walmart Purchase Orders. As defendants have advised plaintiffs, AWD and AWP sourced dusting spray product for Walmart by accessing information on Walmart's supplier portal which displays product inventory. AWD and AWP's understanding is that Walmart has, in this action, produced an Excel spreadsheet showing its Ultra Duster purchases from AWD/AWP during the relevant time-period. In addition, it is believed Walmart will also shortly produce the same spread sheet for the OEM brand "Surf Onn."

Finally, AWD will produce copies of any up-stream purchase order information for the relevant time-period from AWD to Daiho. There are no purchase orders to ZLT (Green Island). ZLT is a supplier of dusting spray. AWD and AWP conduct ordering with ZLT by telephone, requesting a certain number of containers depending on retail customers product requirements. Bills of Lading are deleted upon receipt of product, and Green Island invoices are deleted upon payment. However, the bank records to be produced reflect payments to ZLT for dusting spray. Those entries appear as electronic transfers to "Midland".

The fundamental point of difference between the parties at this stage, as AW defendants understand it, is that plaintiffs now seek "flexibility" in the production, so as to demand documents outside the agreed upon periods, if they are dissatisfied with the production within those periods, and to demand production now of documents which are the subject of its additional pending request. That position negates the agreement which the parties have spent considerable time to negotiate.

Respectfully submitted,

By: /s/ David Martinez
David Martinez, Counsel for Plaintiffs

By: /s/ Philip Downs
Philip Downs, Counsel for the AW Defendants except AW & HO, Inc.

By: /s/ Steven Finley
Steven Finley, Counsel AW & HO (Holdings), Inc.

### Signature Attestation

In compliance with Civil Local Rule 5-1, the filer attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing. Executed this 18th day of January in 2022, at Los Angeles, California.

By: /s/ David Martinez
David Martinez

92396560.1