1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7    BRIAN KELLEY, et al.,                    Case No.  20-cv-06942-JSW

8               Plaintiffs,                   **ORDER GRANTING, IN PART, AND
                                              DENYING, IN PART, MOTION TO**
9         v.                                  **APPLY WISCONSIN LAW**

10   AW DISTRIBUTING, INC., et al.,           Re: Dkt. No. 174

11              Defendants.

12   AND RELATED THIRD PARTY
     COMPLAINTS

13

14

15

16

17

18        Now before the Court for consideration is the motion to apply Wisconsin law, filed by

19   Walmart, Inc., Wal-Mart Stores, Inc., Wal-Mart Stores East, LP, and Wal-Mart Stores East, LLC

20   (the "Walmart Defendants").  Defendants AW Distributing, Inc., AW Product Sales & Marketing,

21   Inc., Kennic Ho, Alice Wong, and AW & Ho (Holdings), Inc. (the "AW Defendants") and

22   defendant Daiho Sangyo, Inc. ("Daiho") all join in the motion.[1]  Unless otherwise noted, the Court

23

24   _____

     [1]      The AW Defendants also have filed a third party complaint against Daiho.  (Dkt. No. 82.)
25   On May 24, 2022, the Court granted the AW Defendants' motion to file a second third party
     complaint against the Girl Scouts of America and Midland Ultra and ordered the AW Defendants
26   to file that pleading.  Although the AW Defendants have filed a proof of service, they have not yet
     filed the new third party complaint.  They are ORDERED to file that document by no later than
27   July 8, 2022.

28

                                              1

1    will refer to the Defendants collectively as the "Moving Defendants."

2        The Court has considered the parties' papers, relevant legal authority, and the record in this

3    case, and it HEREBY GRANTS, IN PART, AND DENIES, IN PART, the motion.[2]

4                                        **BACKGROUND**

5        On November 3, 2018, a group composed of Girl Scouts and their parents was picking up

6    trash on the side of a highway near Chippewa Falls, Wisconsin.  Plaintiffs allege that non-party

7    Colten Treu ("Treu") drove off the highway and struck and killed several members of that group,

8    including Plaintiffs' relatives.  At the time of the accident, Plaintiffs, the decedents, Treu, and his

9    passenger, John Stender, were residents of Wisconsin or of Illinois.  (First Amended Complaint

10   ("FAC"), ¶¶ 6-19.)  The AW Defendants are residents of California.  (*Id.* ¶¶ 20-25.)  The Wal-

11   Mart Defendants are Delaware corporations with principal places of business in Arkansas.  (*Id.* ¶

12   33.)  Daiho is a Japanese limited liability company with a principal place of business in Tokyo,

13   Japan.  (*Id.* ¶ 34.)

14       Plaintiffs allege the Moving Defendants manufacture and/or distribute a product called

15   Ultra Duster.  Ultra Duster is a dust removal product that, like many dust removal products

16   contains "a pressurized volatile, fluorinated hydrocarbon gas called 1-1, difluoroethane ["DFE"]."

17   (*Id.* ¶ 59.)  According to Plaintiffs, DFE has a number of effects that make it a popular substance

18   to abuse by inhaling.  (*Id.* ¶¶ 61-70.)  As shown in the FAC, Ultra Duster's label includes a

19   statement that "misuse by deliberately concentrating and inhaling contents may be harmful or

20   fatal." (*Id.* ¶ 168.)  Plaintiffs also allege that Ultra Duster's label, as well as other informational

21   materials, include a statement that Ultra Duster contains a "bittering agent" to discourage inhalant

22   abuse.  Plaintiffs allege the bittering agent does not effectively prevent individuals from inhaling

23   Ultra Duster and allege the Moving Defendants had no intention of discouraging abuse of the

24

25

---

26   [2]     The Wal-Mart Defendants submitted a declaration to support their motion.  Plaintiffs
     object to paragraphs 7 through 10 and to Exhibit F.  The Court did not rely on that material to
27   resolve the motion and OVERRULES the objections as MOOT.  **The parties shall meet and
     confer about the material Plaintiffs claim should have been filed under seal.  If they cannot
28   resolve that issue, Plaintiffs shall file a motion demonstrating why the material is sealable.**

United States District Court
Northern District of California

product.  (*See id.*, ¶¶ 2-3, 48-179.)[3]

Plaintiffs bring claims under California law against the Moving Defendants for: wrongful death; strict products liability based on (a) design defects, (b) manufacturing defects, and (c) failure to warn; negligence; breach of express and implied warranties; public nuisance; violations of California's Unfair Competition Law; violations of California's False Advertising Law; negligent infliction of emotional distress.  Three Plaintiffs also bring a survival claim.[4]

The Court will address additional facts as necessary.

## ANALYSIS

The Moving Defendants argue that the Court should apply Wisconsin law to Plaintiffs' claims.  Because jurisdiction in this case is premised on diversity, the Court applies California's governmental interest test to determine which law applies to the claims.[5]  *See Rustico v. Intuitive Surgical, Inc.*, 993 F.3d 1085, 1091 (9th Cir. 2021)*; McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 87 (2010).  The Court must conduct a choice-of-law analysis for each issue, and the Moving Defendants bear the burden to show Wisconsin law applies.  *See, e.g., Wash. Mut. Nat'l Bank v. Sup. Ct.*, 24 Cal. 4th 906, 919-20 (2001).

The governmental interest analysis involves a three-step inquiry.  *McCann*, 48 Cal. 4th at

---

[3]    Plaintiffs allege that all of the Moving Defendants "exercised significant control over the designing, manufacturing, distributing, selling, and purchasing of Ultra Duster."  (*Id.* ¶ 36; *see also id.* ¶¶ 33-34, 151; Dkt. No. 190, Plaintiffs' Request for Judicial Notice ("RJN"), Exs. 9, 11 (located at Docket No. 56-3, ECF pp. 293-304 and 338-342, respectively).)  The Moving Defendants did not object to the evidence submitted with Plaintiffs' RJN.  The Court takes judicial notice of the existence of the cited materials but does not take judicial notice of disputed facts in those materials.

[4]    A year after Plaintiffs filed this case, Plaintiffs' counsel filed a case in Circuit Court for Chippewa County Wisconsin that arises out of the same fatal accident and asserts many of the same claims asserted in this case, albeit under Wisconsin law.  *Zwiefelhofer, et al., v. AW Distributing, Inc., et al.*, No. 21CV282.  (Declaration of Megan Wessel ("Wessel Decl."),¶ 2, Ex. A (*Zwiefelhofer* Complaint).)  In addition to the defendants named in this case, the *Zwiefelhofer* plaintiffs also named Treu and various insurance companies as defendants.

[5]    The governmental interest test replaced the prior rule that "the place of the wrong was the applicable law in a California forum regardless of the issues before the court."  *Hurtado v. Sup. Ct.*, 11 Cal. 3d 574, 579-80 (1974) (citing *Reich v. Purcell*, 67 Cal. 2d 551 (1967)).  Accordingly, "the situs of the injury is no longer the sole consideration in California choice-of-law analysis[.]"  *Abogados v. AT&T, Inc.*, 223 F.3d 932, 935 (9th Cir. 2000).

United States District Court
Northern District of California

87.  The first step in the governmental interest analysis is to determine whether there are material differences in the laws of each jurisdiction.  *Id.*  The second step is to determine if there is a "true" conflict.  That requires the Court to examine each jurisdiction's interest in applying its own law under the circumstances of the case.  *Id.*  "If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied."  *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989).  If, however, both jurisdictions have a legitimate interest, there is a true conflict, which triggers the third step of the analysis.

The third step requires the Court to (1) "carefully evaluate[] and compare[] the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired it its policy were subordinated to the policy of the other state" and (2) apply the law of the state whose interest would be more impaired.  *McCann*, 48 Cal. 4th at 97 (internal quotations and citations omitted).  The Court does not consider which state has the "better or worthier rule, but rather [decides] – in light of the legal question at issue and the relevant state interests at stake – which jurisdiction should be allocated the predominating lawmaking power under the circumstances[.]"  *Id.*[6]

A.      **Product Liability Law.**

1.      **There Are Material Differences Between Wisconsin and California Law.**

In contrast, to California law, the Wisconsin Omnibus Tort Reform Act of 2011 (the "Tort Reform Act") limits who can be held liable for defective products and provides for a "reasonable alternative design" test to determine if a product is defective.  Plaintiffs concede that Wisconsin law and California law differ on those issues.

//

---

[6]      The Wal-Mart Defendants argue, in a footnote, that there are other differences between California and Wisconsin law.  (Mot. at 14 n.7.)  However, the Wal-Mart Defendants fail to analyze the remaining prongs of the governmental interest analysis for those issues.  In addition, the Wal-Mart Defendants neither address differences in the law on breach of express or implied warranties nor address how their arguments on product liability, damages, or joint and several liability affect those claims.  Accordingly, the Court concludes they fail to meet their burden and DENIES, IN PART, the motion on that basis.

United States District Court
Northern District of California

1

2. **There are True Conflicts on These Issues.**

2

Plaintiffs concede that Wisconsin and California each have an interest in applying its law

3

to the product liability claims.  Therefore, there is a true conflict.  *See, e.g., Mazza v. Am. Honda*

4

*Motor Co., Inc.*, 666 F.3d 581, 592-93 (9th Cir. 2012).

5

3. **Wisconsin's Interests Predominate.**

6

"California choice-of-law cases … continue to recognize that a jurisdiction ordinarily has

7

'the predominant interest' in regulating conduct that occurs within its borders."  *Id.*, 48 Cal. 4th at

8

97-98.  The primary purpose of California's product liability law is "is to [e]nsure that the costs of

9

injuries resulting from defective products are borne by the manufacturers that put such products on

10

the market rather than by the injured persons who are powerless to protect themselves."  *Cooper v.*

11

*Tokyo Elec. Power Co. Holdings*, 960 F.3d 549, 561 (quoting *Barrett v. Sup. Ct.*, 222 Cal. App. 3d

12

1176, 1186 (1990)).

13

Plaintiffs argue that because none of the defendants are Wisconsin citizens, California's

14

interests predominate.  That fact is not dispositive.  In *McCann*, the plaintiff, who at the time was

15

an Oklahoma resident, alleged he was exposed to asbestos in Oklahoma while observing the

16

installation of a boiler that the defendant designed and manufactured.  The defendant also

17

provided advice on installation.  Nearly fifty years later, the plaintiff was diagnosed with

18

mesothelioma.  At that time, he was living in California.  48 Cal. 4th at 76-78.  The defendant

19

moved for summary judgment and argued an Oklahoma statute of repose applied to the plaintiff's

20

claim.  *Id.* at 78-79.

21

Although the trial court applied Oklahoma law, the Court of Appeal reversed and reasoned

22

the defendant, who was not a resident of Oklahoma, did not fall within the class of defendants the

23

statute was designed to protect, resulting in a false conflict.  The Court of Appeal also ruled, in the

24

alternative, that California's interests would be more impaired if its law was not applied to the

25

resident plaintiff's claim.  *Id.* at 82-83.  The Supreme Court held the Court of Appeal erred by

26

concluding Oklahoma had no interest in applying its statute of repose to non-resident defendants.

27

*Id.* at 76.

28

United States District Court
Northern District of California

5

United States District Court
Northern District of California

It reasoned that unless a state has explicitly indicated its "business friendly" statutes are intended to apply only to in-state residents, "the state ordinarily has an interest in having that policy of limited liability applied to out-of-state companies that conduct business in the state, as well as businesses incorporated or headquartered within the state," even when some of the relevant activities may occur outside of the jurisdiction. *Id.* at 91, 94; *see also Abogados*, 223 F.3d at 935-36 (where foreign law sets boundaries on the scope of liability, such laws serve to protect non-resident defendants "who might not otherwise do business" in the jurisdiction and "limits plaintiffs from recovering even if such conduct damages them").

The Supreme Court also held that the Court of Appeal erred in its analysis of the third prong of the governmental interest test.  It acknowledged that California has a legitimate interest in giving its residents "a fair and reasonable opportunity" to seek recovery for asbestos related illness or injury, even if that exposure occurred elsewhere.  48 Cal. 4th at 94-95.  However, it held that the application of California law would "subordinat[e] Oklahoma's interest" in applying its statute of response based "solely" upon circumstances that occurred "*after* defendant engaged in the allegedly tortious conduct in Oklahoma," *i.e.* the plaintiff's move to California.  *Id.* at 98 (emphasis in original).  Because those circumstances were outside the defendant's knowledge or control, application of California law "would significantly undermine Oklahoma's interest in establishing a reliable rule of law governing a business's potential liability for conduct undertaken in Oklahoma."  *Id*.

Plaintiffs acknowledge Wisconsin has an interest in attracting business to the state.  However, they argue California is the "epicenter" of this litigation. The parties each have valid arguments about where the "majority of the conduct" occurred.  On the one hand, Plaintiffs allege that Ultra Duster was designed and distributed from California.  For example, they note that the agreement between the AW Defendants and the Wal-Mart Defendants provides that Wal-Mart will pick up their shipments of Ultra Duster in California.  They also note that the Wal-Mart Defendants distribute Ultra-Duster in California.  On the other hand, Treu purchased Ultra Duster in Wisconsin and that is where the accident occurred.  *Cf. Lemmon v. Snap, Inc.*, No. 19-cv-4504-MWF (KSx), 2022 WL 1407936, at *3 (C.D. Cal. Mar. 31, 2022) (finding majority of conduct

United States District Court
Northern District of California

1    factor neutral where product was designed in California but accident allegedly resulting from use

2    of product took place in Wisconsin).

3          As discussed, in *McCann,* the Supreme Court held that Oklahoma's interests

4    predominated, even though some of the relevant activities took place outside Oklahoma.

5    Although the plaintiff alleged that it was reasonably foreseeable to the defendant that insulation

6    containing asbestos would be used during installation of the boiler and alleged the defendant had a

7    duty to warn him of that hazard, the Supreme Court reasoned that "[t]o be effective … such a

8    warning would have to have been communicated to plaintiff in Oklahoma."  48 Cal. 4th at 94

9    n.12.  Here, Plaintiffs similarly allege that the Moving Defendants knew, or should have known,

10   that Ultra Duster could be misused, failed to prevent individuals from inhaling the product, and

11   failed to adequately warn users of the potential harm for users and innocent bystanders.  (*See, e.g.,*

12   FAC ¶¶ 3, 5, 172-175.)  However, given the circumstances of this case, "[t]o be effective" in

13   preventing the injuries suffered by Plaintiffs, "such a warning would have to have been

14   communicated" to users in Wisconsin.  *McCann*, 48 Cal. 4th at 94 n.12.

15         Although Plaintiffs are correct that relevant conduct occurred within California, the

16   accident, which occurred in Wisconsin, was the last event necessary to make the Moving

17   Defendants liable to Plaintiffs.[7]  In addition, the accident did not injure any California residents.

18   On the facts of this case, the Court concludes that "California's interest in applying its law to

19   [non-residents] is attenuated" and that its interest in regulating the Moving Defendants' conduct

20   would not be substantially impaired in this case.  *Mazza,* 666 F.3d at 594; *see also Cooper*, 960

21   F.3d at 561 ("California has an interest in holding manufacturers of defective products liable in

22   tort to ensure compensation *for its residents.*") (emphasis added); *Lemmon,* 2022 WL 1407936, at

23   *3 (concluding Wisconsin had greater interest in having substantive law on negligence applied

24   where accident occurred in Wisconsin); *Frezza v. Google, Inc.*, No. 12-cv-537-RMW, 2013 WL

25

26   [7]    When it denied the AW Defendants' motion to dismiss, the Court stated California had a
     justifiable interest in regulating the conduct of its corporations and noted that Plaintiffs alleged
27   that the AW Defendants sold, marketed, and advertised the Ultra Duster product in California.
     However, at that time, the Court did not evaluate which jurisdiction had the predominating interest
28   in having its law applied.  As such, the Court concludes its findings in that Order do not conflict
     with its findings here.

1736788, at *7 (concluding that where "last events necessary for liability" occurred in North Carolina and injured North Carolina residents, North Carolina's interest in having its law predominated).

Accordingly, the Court concludes Wisconsin's interest in having its law applied to Plaintiffs' product liability claims predominates and GRANTS, IN PART, the motion on this basis.

**B.      Wrongful Death Damages (Punitive and Compensatory) and Joint and Several Liability.**

**1.      The Laws Differ.**

The Moving Defendants also argue the Court should apply Wisconsin's law on damages and joint and several liability.  Unlike California, Wisconsin places caps on damages in wrongful death claims.  Wisconsin law also provides for joint liability only if a party's responsibility is 51% or greater.  Plaintiffs do not dispute that Wisconsin and California law differ on these issues.  The choice of law for issues of substantive liability will not necessarily result in the same choice for issues of damages.  *See, e.g., Browne v. McDonnell Douglas Corp.*, 504 F. Supp. 514, 517 (N.D. Cal. 1980).

California law is presumptively applicable, unless the Moving Defendants demonstrate Wisconsin has the more compelling interest in having its law applied.  The interests involved in a claim for wrongful death are:

> (1) compensation for survivors, (2) deterrence of conduct and (3) limitation, or lack thereof, upon the damages recoverable.  *Reich* … recognizes that all three aspects are primarily local in character.  The first aspect, insofar as Plaintiffs are concerned, reflects the state's interest in providing for compensation and in determining the distribution of the proceeds, said interest extending only to local decedents and local beneficiaries…; the second, insofar as Defendants are concerned, reflects the state's interest in deterring conduct, said interest extending to all persons present within its borders; the third, insofar as Defendants are concerned, reflects the state's interest in protecting resident defendants from excessive financial burdens.  In making a choice of law, these three aspects of wrongful death must be carefully separated.

*Hurtado*, 11 Cal. 3d at 584; *see also Reich,* 62 Cal. 2d at 556 ("Limitations of damages for wrongful death … have little or nothing to do with conduct.  They are concerned not with how

people should behave but with how survivors should be compensated."). Punitive damages, in turn, serve a "State's legitimate interests in punishing unlawful conduct and deterring its repetition." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 569 (1996).

With respect to these three issues, the Court concludes that the Moving Defendants' focus on where the accident occurred does not adequately address the governmental interests implicated by wrongful death statutes and punitive damages where, as here, at least some of the Defendants are California residents.

Accordingly, the Court DENIES the Moving Defendants' motion to apply Wisconsin law on these issues, without prejudice to renewing the motion to address the issues discussed above.

IT IS SO ORDERED.

Dated: June 30, 2022

_____
JEFFREY S. WHITE
United States District Judge