UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRIAN KELLEY, et al.,

    Plaintiffs,

v.

AW DISTRIBUTING, INC., et al.,

    Defendants.

Case No. 20-cv-06942-JSW

**ORDER GRANTING, IN PART, AND DENYING, IN PART, DAIHO SANGYO, INC'S MOTION FOR SUMMARY JUDGMENT AND SCHEDULING CASE MANAGEMENT CONFERENCE**

Re: Dkt. No. 225

This matter comes before the Court on consideration of the motion for summary judgment filed by Defendant Daiho Sangyo, Inc. ("Daiho"). Plaintiffs oppose the motion. AW Distributing, Inc. ("AW Distributing"), AW Product Sales & Marketing, Inc., Kennic Ho, and Alice Wong also oppose Daiho's motion.[1] The Court has considered the parties' papers, relevant legal authority, and the record in this case and HEREBY GRANTS, IN PART, AND DENIES, IN PART, Daiho's motion.

**BACKGROUND**

Unless otherwise noted, the following facts are undisputed. Plaintiffs bring claims against Daiho, the AW Defendants, and the Wal-Mart Defendants for wrongful death (claim 1), strict product liability based on design defects, manufacturing defects, and failure to warn (claims 2

---

[1] Plaintiffs, the AW Defendants, and Walmart Inc., Wal-Mart Stores, Inc., Wal-Mart Stores East, LP, and Wal-Mart Stores East, LLC (collectively the "Wal-Mart Defendants") asked the Court to defer ruling on the motion to allow discovery, pursuant to Federal Rule Civil Procedure 56(d). The parties later stipulated to withdraw those requests. (Dkt. Nos. 264-265.) The Wal-Mart Defendants did not file a substantive opposition to Daiho's motion.

1

through 4), negligence (claim 5), breach of express and implied warranties (claims 6 and 7), violations of California's Unfair Competition Law and California's False Advertising Law (claims 8 and 9), public nuisance (claim 10), negligent infliction of emotional distress (claim 11), and a survival claim (claim 12). The AW Defendants filed a cross-claim against Daiho seeking indemnification and contribution. (Dkt. No. 82.)

The AW Defendants sell a dust removal product, Ultra Duster, which contains "a pressurized volatile, fluorinated hydrocarbon gas called 1-1, difluoroethane ['DFE']." (First Amended Complaint ("FAC") ¶ 59.) According to Plaintiffs, DFE is a popular substance to abuse by inhaling. (*Id.* ¶¶ 61-70.) Ultra Duster's label includes a statement that "misuse by deliberately concentrating and inhaling contents may be harmful or fatal." Ultra Duster also purportedly contains a "bittering agent" to discourage inhalant abuse, but Plaintiffs claim the bittering agent is ineffective and may not even be present in Ultra Duster. (*Id.* ¶¶ 168, 183-184.)

On November 3, 2018, non-parties Colton Treu and John Stender purchased a can of Ultra Duster at a Wal-Mart in Chippewa Falls, Wisconsin.[2] Treu and Stender inhaled the contents while Treu was driving, and Treu drove off the highway and struck and killed members of a group of Girl Scouts and their parents. Plaintiffs' relatives were among the individuals killed.

Daiho distributed Ultra Duster to AW Distributing from July 2008 until June 2018. (Dkt. No. 225-1, Declaration of John Radmer ("Radmer Decl."), ¶¶ 2-3; Dkt. No. 225-2 at EC pp. 2-6, Radmer Decl., Ex. A, Declaration of Toru Hosoi ("Hosoi Decl."), ¶¶ 2-3); Dkt. No. 225-2 at ECF pp. 4-38, Radmer Decl., B, Daiho Response to Plaintiffs' First Set of Interrogatories ("Daiho Resp. to Rog.") 4(b)); *see also* Dkt. No. 236, Declaration of Kennic Ho ("Ho Decl."), ¶¶ 3, 12.)[3] Daiho and the AW Defendants' business relationship ended in litigation (the "Daiho-AW

---

[2] The Court denied the AW Defendants' motion to transfer this case to the United States District Court for the Western District of Wisconsin. (Dkt. No. 71.) A year after Plaintiffs filed this case, their counsel filed a case in Circuit Court for Chippewa County Wisconsin that arises out of the same fatal accident and asserts many of the same claims asserted in this case, albeit under Wisconsin law. *Zwiefelhofer, et al., v. AW Distributing, Inc.*, et al., No. 21CV282. In addition to the defendants named in this case, the *Zwiefelhofer* plaintiffs also sued Treu and various insurance companies.

[3] The AW Defendants object to exhibits attached to Mr. Radmer's declaration. The Court addresses those objections in Section B.

2

Litigation").

Daiho does not dispute that "during the time [it] sold Ultra Duster to … AW Distributing, [it] was involved in the design of Ultra Duster[.]" (Stipulation to Withdraw Rule 56(d) Requests at 2:12-14.) Daiho argues it is entitled to summary judgment because it did not manufacture, sell, or otherwise distribute Ultra Duster after June 2018 and argues that it did not manufacture, distribute, or sell the can found in Treu's vehicle (the "can at issue"). (*See* Hosoi Decl., ¶¶ 2-8; Daiho Resp. to Rogs. 4, 15.)

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

**A.    Applicable Legal Standards.**

"A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment, or partial summary judgment, is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not weigh evidence or make determinations of credibility. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson*, 477 U.S. at 248-49. A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, the party must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine*

3

*Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets its initial burden, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). It is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Id.* (quoting *Richards*, 55 F.3d at 251); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (cleaned up). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.  Evidentiary Issues.**

Plaintiffs filed a request for judicial notice and ask the Court to take notice of over 80 media reports documenting injuries caused by the abuse of dust removal sprays. These reports were most relevant to the analysis of the public nuisance claim. Although the Court GRANTS Plaintiffs' request, it addresses their failure to rely on particular exhibits in its analysis of that claim.

The AW Defendants object to Daiho Exhibits F, G, I, J, K, O and Q on the basis that Daiho failed to establish an adequate foundation and failed to authenticate the exhibits. The AW Defendants also argue the exhibits contain inadmissible hearsay. (Dkt. No. 244, Objections.) With the exception of Exhibit K, the Court did not rely on any of these exhibits to resolve the motion. Accordingly, the Court OVERRULES AS MOOT the AW Defendants' objections to Exhibits F, G, I, J, O, and Q. Exhibit K is a police report, and Mr. Radmer establishes that the document is what it purports to be. Daiho also submits deposition testimony regarding the contents of the report. Accordingly, the Court OVERRULES the AW Defendants' objections to Exhibit K.

//

### C. Daiho Is Entitled to Summary Judgment on the Strict Liability Claims.

The Court has determined that Plaintiffs' strict liability claims are governed by Wisconsin law. (Dkt. No. 216, Order Granting, in Part, and Denying, in Part, Motion to Apply Wisconsin Law at 7:4-6.) The essential elements of a strict liability claim against a manufacturer are set forth in Wisconsin Statute section 895.047(1)(a)-(e) ("Section 895.047").[4] "[S]trict liability can extend to entities besides the manufacturer under certain circumstances." *State Farm. Fire & Cas. Co. v. Amazon.com*, 390 F. Supp. 3d 964, 968 (W.D. Wis. 2019); *see also* Wis. Stat. § 895.047(2) (seller and distributor liability). Sellers and distributors of a product are not liable unless a plaintiff proves the manufacturer would be liable under Section 895.047(1) and proves, *inter alia,* that "the seller or distributor has contractually assumed one of the manufacturer's duties to … design… the product." *Id.* § 895.047(2)(a)(1).[5]

In 2011, the Wisconsin legislature enacted the Omnibus Tort Reform Act of 2011 or "Act 2." *See* 2011 Wis. Act. 2 §§ 29-31, 45(5) (codified at Wis. Stat. § 895.046). Act 2 was intended to

> clarify product liability law, generally, and the application of the risk contribution theory of liability …, specifically, in order to return tort law to its historical, common law roots. This return both protects the rights of citizens to pursue legitimate and timely claims of injury resulting from defective products, and assures that business may conduct activities in [Wisconsin] without fear of being sued for indefinite claims of harm from products which businesses may never have manufactured, distributed, sold, or promoted, or which were made and sold decades ago.

Wis. Stat. § 895.046(1g).

> [Act 2] applies to *all* actions in law or equity, whenever filed or accrued, in which a claimant alleges that the manufacturer, distributor, seller, or promoter of a product is liable for an injury or harm to a person or property, *including* actions based on allegations that the design, manufacture, distribution, sale, or promotion of, or instructions or warnings about, a product caused or contributed to a

---

[4] Daiho's focus is on whether it manufactured, distributed, or sold the can at issue, and it has not challenged Plaintiffs' ability to prove these elements.

[5] Section 895.047(2)(a) includes two other conditions under which a seller or distributor may be held liable, but Plaintiffs do not argue those conditions are applicable. (Dkt. No. 238, Plaintiffs' Opp. Br. at 10:13-11:5.)

5

> personal injury or harm to a person or property, a private nuisance, and to all related or independent claims, including unjust enrichment, restitution, or indemnification.

*Id.* § 895.046(2) (emphasis added).

Act 2 provides for two avenues of liability, only one of which is relevant here. In addition to proving the other elements necessary to their claim, a plaintiff is required to prove "the manufacturer, distributor, seller, or promoter of a product manufactured, distributed, sold, or promoted the *specific product* alleged to have caused" injury or harm. *See R.S.B. v. Merck & Co., Inc.*, No. 20-C-1402-WCG, 2021 WL 6113765, at *3 (E.D. Wis. Dec. 27, 2021) (quoting Wis. Stat. § 895.046(3)) (emphasis added).[6]

Section 895.047 does not define the terms manufacturer, distributor, or seller. Plaintiffs and the AW Defendants argue there is sufficient evidence to show that Daiho can be held liable based on its role in designing Ultra Duster.[7] *See, e.g., State Farm*, 390 F. Supp. 3d at 972 (noting Wisconsin courts have "endorsed the principle that strict liability derives from the act of putting the defective product into the stream of commerce) (citing cases); *see also Fuchsgruber v. Custom Accessories, Inc.,* 244 Wis. 2d 758, 773, 628 N.W.2d 833, 841 (Wis. 2001) ("In strict product liability actions, the act to which the seller's responsibility attaches is not an act of negligence. If indeed it is an act at all, it is simply the act of placing or maintaining a defective product in the stream of commerce.") (cleaned up); *accord Janusz v. Symmetry Med., Inc.*, 256 F. Supp. 3d 995, 1003, 1006 (E.D. Wis. 2017) (citing *Fuchsgruber* and construing Act 2 as "reaffirming Wisconsin's commitment to the principles of strict liability"). Plaintiffs also argue that holding Daiho liable under these circumstances is entirely consistent with the general principle of strict liability: "to shift costs associated with unsafe products to those who are in the best position to disperse those costs (be it through insurance, indemnity, or some other means)." *Januscz*, 256 F.

---

[6] The second avenue permits a plaintiffs to proceed without specific product identification under a "risk contribution" theory. *R.S.B.*, 2021 WL 6117765, at *3 (citing Wis. Stat. § 895.046(4)). Plaintiffs disclaim reliance on the risk contribution theory. (Plaintiffs' Opp. Br. at 13:5-6.)

[7] Plaintiffs state they are proceeding against Daiho based on its role in Ultra Duster's design. (Plaintiffs' Opp. Br. at 8:20-24.)

6

Supp. 3d at 1006.

After June 8, 2018, AW Distributing obtained Ultra Duster directly from third-party defendant Mid-Land Ultra d/b/a Green Island.[8]  The can of Ultra Duster found in Treu's vehicle bears markings that show it was manufactured on September 3, 2018 by Green Island.  (*See, e.g.,* Ho Decl., ¶¶ 7, 9; Dkt. No. 241, Declaration of David Martinez ISO Plaintiffs' Opp. ("Martinez Decl."), ¶¶ 7-8, 10-13; Dkt. Nos. 241-4, 241-7, 242-3, and 241-9, Martinez Decl., Ex. E, AW Distributing Resp. to Rog. 16, and Exs. H-J; Dkt. No. 56-1, Declaration of Lucas A. Messenger, ¶ 4, Ex. C at ECF pp. 17-213, Deposition of Kennic Ho at 20:7-19, 21:15-21; Hosoi Decl., ¶¶ 5-6; Radmer Decl., ¶¶ 12, 14; Dkt. No. 225-3 at ECF pp. 1-2, Radmer Decl., Ex. K ; Dkt. No. 225-3 at ECF pp. 38-50, Radmer Decl., Ex. M, Deposition of Timothy Bowman ("Bowman Depo.") at 9:19-11:8, 18:8-21.)[9]

Mr. Ho attests that, because of the time required to supply Green Island with parts and "the unknown level of inventory of parts held by Green Island in June 2018," it is "entirely possible" that when the can at issue was made in September 2018, it was made with parts Daiho supplied to Green Island.  (Ho Decl., ¶ 17.)[10]  He also attests "[t]he specifications for the Ultra Duster product supplied by [Green Island] remained unchanged from those created by Daiho.  As such, the products procured by [AW Distribution] from Green Island were the same as what Daiho would have shipped."  (*Id.*, ¶ 16.)  Daiho does not dispute the evidence that Ultra Duster's design did not change between June and September 2018.  It argues that fact is immaterial because Wisconsin

---

[8]  Green Island has not yet appeared.

[9]  In 2016, Mr. Ho was deposed in *Greico et al. v. AW Distributing, Inc. et al.*, Case No. 50-2012-CA-021342-MB (Fla. Cir. Ct. Feb. 15, 2016) (the "*Greico* Litigation").  In that case, the plaintiffs sued Daiho, AW Distributing, and Wal-Mart East, based on allegations they had been severely injured by a driver who had inhaled Ultra Duster.  (Martinez Decl., ¶ 14; Dkt. No. 241-10, Martinez Decl., Ex. K, *Greico* Litigation Complaint.)

[10]  The AW Defendants argue that because Plaintiffs allege the bittering agent was ineffective, Daiho could be held liable as a manufacturer of a component part.  *See Janusz,* 256 F. Supp. 3d at 1008 (concluding defendant could be liable for manufacturing the component of the product alleged to be defective even though it was incorporated into larger product).  However, Plaintiffs' theory is not that one component of Ultra Duster was defective.  They argue the entire product, and its accompanying warnings, were defective.  Accordingly, the Court finds the AW Defendants' reliance on *Janusz* unpersuasive.

7

law does not provide liability for "so called non-manufacturer designers." (Dkt. 247, Reply at 6:8-9.)

Mr. Ho may have knowledge about the time it would have taken to supply Green Island with the relevant parts for Ultra Duster, but he does not include those details in his declaration. Even construing his declaration in the light most favorable to Plaintiffs and the AW Defendants, Mr. Ho can only speculate about Daiho's involvement in placing that can into the stream of commerce.[11] Without further evidence, Plaintiffs cannot overcome Daiho's motion. *See Summers*, 127 F.3d at 1152. Accordingly, the Court concludes Daiho is entitled to judgment in its favor on Plaintiffs' second, third, and fourth claims for relief.[12]

### D. Negligence and Negligent Infliction of Emotional Distress.

Daiho argues the Court should apply Wisconsin law to Plaintiffs' negligence claims because these claims are based on theories of product liability. Plaintiffs argue Daiho fails to meet its burden to show Wisconsin law should apply. Although they take the position that their negligence claims are not product liability claims, Plaintiffs do not suggest the claims are based on anything other than the alleged defects in Ultra Duster's design, manufacturing, or warnings. Accordingly, the Court concludes that Wisconsin law should be applied to these claims as well.

The Wisconsin Supreme Court recently held that Section 895.047 "does not extinguish a plaintiff's ability to bring a claim in negligence against a product manufacturer." *Murphy v. Columbus McKinnon Corp.*, 405 Wis. 2d 157, 186, 982 N.W.2d 898, 912 (Wis. 2022); *see also Janusz,* 256 F. Supp. 3d at 1008 (citing *Glassey v. Continental Ins. Co.*, 176 Wis. 2d 587, 602, 500 N.W.2d 295, 301 (Wis. 1993)); Wis. Stat. § 895.047(6). A "manufacturer's duty of care includes the duty to safely design the product so it is fit for its intended purpose, and the duty to conduct adequate inspections and tests to determine the extent of defects." *Moore v. Nat'l Presto Indus., Inc.*, 603 F. Supp. 3d 676, 683 (W.D. Wis. 2022) (citing Wis. Civil Jury Instructions § 3200(2)).

---

[11] The Court SUSTAINS Daiho's objection to the portion of Mr. Ho's declaration asserting it is "entirely possible" that the can at issue was made with parts supplied by Daiho.

[12] In light of this ruling, Daiho also is entitled to judgment in its favor on the AW Defendants' cross-claim to the extent they seek relief from Daiho based on these claims.

Daiho argues that Section 895.046 bars Plaintiffs' claims because it did not manufacture, sell, or distribute the can at issue. The Court agrees that the product identification requirement of Section 895.046 applies to Plaintiffs' common law claim for negligence. *See, e.g., R.S.B.*, 2021 WL 6113765, at *4-*5; *Frase v. Ashland Chem. Co. Div. of Ashland, Inc.*, No. 19-cv-273-WMC, 2020 WL 1974190, at *3 (W.D. Wis. Apr. 24, 2020). However, the unrefuted evidence before the Court is that Ultra Duster's design remained unchanged between July and September 2018. The Court concludes that evidence *is* sufficient to overcome Daiho's motion on the negligence based claims. Daiho's arguments that it cannot be liable because the AW Defendants had the opportunity to change the formulation of Ultra Duster are issues of fact relating to causation.

Accordingly, the Court DENIES Daiho's motion for summary judgment on Plaintiffs' common law negligence claim. Because Daiho does not challenge any other elements of Plaintiffs' claim for negligent infliction of emotional distress, the Court DENIES its motion for summary judgment on that claim as well.

**E.     Daiho Is Entitled to Judgment on the Public Nuisance Claim.**

Plaintiffs also assert a claim for public nuisance under California law, which provides that a nuisance is, *inter alia,* "anything that is injurious to health or is indecent or offensive to the senses[.]" Cal. Civ. Code § 3479. "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." *Id.* § 3480. In order to show "standing" to pursue this claim, Plaintiffs must be able to show they suffered harm that is "different from the type of harm suffered by the general public." *Schaeffer v. Gregory Village Partners, L.P.*, 105 F. Supp. 3d 951, 966 (N.D. Cal. 2015); *see also* Cal. Civ. Code § 3493 ("A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise.").

To satisfy this requirement, Plaintiffs' injury must be "different in *kind*-not merely in degree-from that suffered by the general public." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1211 (9th

9

Cir. 2003) (emphasis in original).[13] In *Ileto,* the plaintiffs were victims of gun violence who brought claims for negligence and public nuisance against gun manufacturers, distributors, and dealers. *Id.* at 1194. The Ninth Circuit concluded that most of the plaintiffs satisfied the standing requirement by alleging they suffered "trauma resulting from an assault with a gun and gun shot wounds." *Id.* at 1212. The court concluded that harm was different in kind from "the danger, fear, inconvenience, and interference with the use and enjoyment of public places that affect the tenor and quality of everyday life that plaintiffs allege are suffered by the general public." *Id.* (cleaned up).

Daiho argues Plaintiffs cannot show their injuries are "special" or otherwise different from the harm they claim is suffered by the general public. Plaintiffs argue that "Daiho contributed to an addiction crisis of DFE abuse, endangering drivers and pedestrians on public roadways," and argue "the general public suffers from danger, fear, inconvenience, and interference with the use and enjoyment of public places." (Plaintiffs Opp. Br. at 20:25-26 (internal quotations omitted).) Plaintiffs allege, however, that Defendants created a public nuisance because they induced people to use Ultra Duster in a manner that "resulted in death and injury to innocent bystanders in motor vehicle crashes." (FAC ¶¶ 315, 318-320, 325.)

Plaintiffs also argue the evidence they submit shows "the widespread abuse of Ultra Duster in California and Wisconsin, and the harms that such abuse has caused the community[.]" (Plaintiffs' Opp. Br. at 23 n.9.) One of the exhibits on which Plaintiffs rely consists of a large number of media reports. Another exhibit consists of multiple documents produced by the Wal-Mart Defendants. (Martinez Decl., ¶¶ 2-3; Dkt. No. 241-1, Martinez Decl., Ex. A; Dkt. No. 242-2, Martinez Decl., Ex. B.) Finally, Plaintiffs rely on an expert report submitted in the *Greico* Litigation. (Martinez Decl., ¶ 6; Dkt. No. 241-3, Ex. C.) However, Plaintiffs do not refer the

---

[13] Daiho also argues that Plaintiffs, as non-residents, should not be permitted to pursue this claim under California law. Under Wisconsin law, a plaintiff also must demonstrate an injury that differs from the injury suffered by the general public. *See, e.g., Costas v. Fond du Lac*, 24 Wis. 2d 409, 414, 129 N.W.2d 217, 219 (Wis. 2005) ("A public nuisance which causes a particular injury to an individual different in kind and degree from that suffered by the public constitutes a private nuisance."). Accordingly, whether California or Wisconsin law applies, the Court concludes Daiho is entitled to summary judgment on this claim.

Court to specific articles, documents, or portions of the expert report that would support their assertion that they have suffered harms that differ in kind and not merely in degree from the general public. It is not this Court's task to scour the record for such evidence. *See Keenan*, 91 F.3d at 1279.

Accordingly, the Court concludes Plaintiffs have not met their burden to overcome Daiho's motion, and it GRANTS Daiho's motion on Plaintiffs' public nuisance claim.[14]

### F. Daiho Is Entitled to Judgment on the Breach of Warranty Claims.

Daiho argues that under either Wisconsin or California law it is entitled to summary judgment on Plaintiffs' two breach of warranty claims because it did not sell the can at issue. Plaintiffs argue Daiho's motion is premature because the assertion that Daiho did not manufacture or sell the can at issue has not been tested in discovery. Because Plaintiffs and the AW Defendants withdrew their Rule 56(d) requests, for the reasons set forth in Section C, Mr. Ho can only speculate about Daiho's role in manufacturing or selling the can at issue.

Accordingly, the Court GRANTS Daiho's motion for summary judgment on these claims.[15]

### G. Daiho is Entitled to Judgment on the UCL Claim.

Plaintiffs have agreed to drop their UCL claim against Daiho. Accordingly, the Court GRANTS Daiho's motion for summary judgment on that claim.[16]

### H. Daiho is Not Entitled to Summary Judgment on the Wrongful Death and Survivor Claims.

Daiho moved for summary judgment on these claims on the basis that the Plaintiffs lack

---

[14] Because the Court concludes Daiho is entitled to summary judgment on Plaintiffs' public nuisance claim, it also is entitled to judgment on the AW Defendants' cross-claim, to the extent the cross-claim seeks relief based on this claim.

[15] Again, to the extent the AW Defendants' cross-claim seeks relief based on Plaintiffs' warranty claims, Daiho is entitled to judgment in its favor.

[16] Daiho did not address Plaintiffs' FAL claim in its motion. In light of Plaintiffs' concessions regarding the UCL claim, the Court ORDERS the parties to meet and confer as to whether that claim should be dismissed as well.

11

any underlying claim. Because the Court has denied its motion for summary judgment on the negligence claims, the Court DENIES its motion on these claims as well.

**I.   Daiho Is Entitled to Summary Judgment on the AW Defendants' Cross-Claim.**

Daiho argues that the AW Defendants' cross-claim is barred by their Settlement Agreement, which contains a release ("Release") and a covenant not to sue ("Covenant"). The Release provides, in relevant part:

> [u]pon full payment of the Settlement Sum, [AW Distributing] on behalf of itself and on behalf of the AWD Released Persons[17] will hereby fully, finally and forever release all matters, disputes, and differences, whether known or unknown, suspected or unsuspected, which now exist or may exist in the future against the Daiho Released Persons[18], or any of them, which were or could have been asserted, and which constitute one or more Released Claims; and Daiho, on behalf of itself and on behalf of the Daiho Released Persons hereby will fully, finally and forever release all matters, disputes and differences, whether known or unknown, suspected or unsuspected, which now exist or may exist in the future against the AWD released Persons, or any of them, which were or could have been asserted, and which constitute one or more Released Claims.

(Radmer Decl., ¶ 22; Dkt. No. 225-3 at ECF pp. 412-421, Radmer Decl., Ex. U, Daiho-AW Litigation Settlement Agreement, ¶ 5.)

The Covenant provides, in relevant part:

> [e]ach Party intends hereby to settle, fully, finally and forever, and to release all matters, disputes and differences, whether known or unknown, suspected or unsuspected, which now exist or may exist in the future against the other Parties, or any of them, which were or could have been asserted, and which constitute one or more Released Claims. Each Party further covenants not to sue or take any further legal action whatsoever by reason of any and all Released Claims. Each Party covenants not to bring, commence, institute, maintain, prosecute, voluntarily aid in, encourage, benefit from, or otherwise support any action at law, proceeding in equity, or any other legal proceeding against any Released Persons arising out of or in any way related to any of the Released Claims.…

---

[17]   The AWD Released Persons are Ho, Wong, and AW Distribution. (Settlement Agreement, § 1(d).

[18]   The Daiho Released Persons are Daiho and "its respective parent and affiliated entities, including Air Water, Inc., subsidiaries and predecessors-in-interest, past, present and future principals, directors, officers, employees, founders, shareholders, members, consultants, attorneys, accountants and agents, individually and collectively." (Settlement Agreement, ¶ 1(e).)

12

(*Id.* ¶ 7.)

Finally, the term Released Claims means,

> [t]o the fullest extent permitted by law, the release and discharge of any and all Claims of any kind whatsoever arising out of or related to any matters, events, acts, omissions, causes or things that took place on or at any time *before the Effective Date*. Such Released Claims include, *but are not limited to*, any Claims arising out of or related to in any way to the [the Daiho-AW Litigation] as well as any other actions, suits, proceedings or other legal processes now pending anywhere in the world (including but not limited to the [*Greico* Litigation]), and all Claims that were alleged or could have been alleged in such forums; (ii) any and all contracts or alleged understanding between Daiho and any AWD Parties and/or AWD Released Persons including but not limited to [AW Distribution].

(*Id.* ¶ 1(c) (emphasis added).)

It is undisputed that the accident took place before the Effective Date of the Settlement Agreement. The AW Defendants argue their cross-claim for indemnification and contribution must be construed to arise after the Effective Date because any losses have not been allocated among the Defendants. The Court is not persuaded by the AW Defendants' argument. First, the term Claim is not linked to any particular litigation. (*Id.* ¶ 1(a).) Second, even taking the facts in the light most favorable to the AW Defendants, based on the record before the Court, Daiho's involvement with the design of Ultra Duster took place before the Effective Date of the Settlement Agreement. Finally, the AW Defendants have not come forth with any evidence to suggest the language used in the Release or in the Covenant is ambiguous. Accordingly, the Court concludes they have not met their burden to overcome Daiho's motion.

## CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, Daiho's motion for summary judgment. The Court ORDERS the parties to appear for a further case management conference on March 31, 2023 at 11:00 a.m., which the Court will conduct by Zoom webinar. The Court reserves the right to resolve any issues by written order in lieu of a Zoom appearance.

//

//

The parties shall file an updated joint case management conference statement by March 24, 2023.

**IT IS SO ORDERED**.

Dated: February 21, 2023

_____
JEFFREY S. WHITE
United States District Judge