UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN KELLEY, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>AW DISTRIBUTING, INC., et al.,<br><br>  Defendants.<br><br>AND RELATED THIRD PARTY COMPLAINTS | Case No. 20-cv-06942-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, THE AW DEFENDANTS' MOTION TO APPLY WISCONSIN LAW**<br><br>Re: Dkt. Nos. 272, 276, 290 |

Now before the Court for consideration is the motion to apply Wisconsin law, filed by Defendants AW Distributing, Inc., AW Product Sales & Marketing, Inc., Kennic Ho, Alice Wong, and AW & Ho (Holdings), Inc. (the "AW Defendants"). Walmart, Inc., Wal-Mart Stores, Inc., Wal-Mart Stores East, LP, and Wal-Mart Stores East, LLC (the "Walmart Defendants") and defendant Daiho Sangyo, Inc. ("Daiho") all join in the motion. Unless otherwise noted, the Court will refer to the Defendants collectively as the "Moving Defendants." The Court has considered the parties' papers, relevant legal authority, and the record in this case and HEREBY GRANTS, IN PART, AND DENIES, IN PART, the motion.

//

//

1

**ANALYSIS**

The Court has recounted the facts underlying this dispute in several prior orders and will not recount them in detail here. *See, e.g., Kelley v. AW Distributing, Inc.*, 2022 WL 2356988, at *1-*2 (N.D. Cal. June 30, 2022) ("*Kelley I*") (granting, in part, and denying without prejudice, in part, Walmart Defendants' motion to apply Wisconsin law). The Court has determined Wisconsin law will apply to Plaintiffs' product liability and negligence claims. *Id.* at *3-4 (product liability claims); *Kelley v. AW Distributing, Inc.*, -- F. Supp. 3d --, 2023 WL 2167391, at *4 (N.D. Cal. Feb. 21, 2023) (negligence claims). The Court denied, without prejudice, Moving Defendants motion to apply Wisconsin law to (1) compensatory and punitive damages on Plaintiffs' wrongful death claims and (2) joint and several liability. *Id.*, at *5. The Moving Defendants now ask the Court to apply Wisconsin law on those issues.

Because jurisdiction in this case is premised on diversity, the Court applies California's governmental interest test to determine which law applies. *See Rustico v. Intuitive Surgical, Inc.*, 993 F.3d 1085, 1091 (9th Cir. 2021); *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 87 (2010). California law will apply unless "there is a compelling reason to displace" it in favor of Wisconsin law. *Browne v. McDonnell Douglas Corp.*, 504 F. Supp. 514, 517 (N.D. Cal. 1980) (citing *Kasel v. Remington Arms Co.*, 24 Cal. App. 3d 711 (1972)). The Moving Defendants bear the burden to show Wisconsin law applies for each issue. *See, e.g., Wash. Mut. Nat'l Bank v. Sup. Ct.*, 24 Cal. 4th 906, 919-20 (2001).

The governmental interest analysis involves a three-step inquiry. *McCann*, 48 Cal. 4th at 87. The first step in the governmental interest analysis is to determine whether there are material differences in the laws of each jurisdiction. *Id.* The second step is to determine if there is a "true" conflict. *See, e.g., McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989) ("If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied.") If there is not, the inquiry ends.[1]

---

[1] "[W]hen *neither* jurisdiction has an interest in the application of its rule of law, California applies its own law." *Marsh v. Burrell*, 805 F. Supp. 1493, 1497 (N.D. Cal. 1992) (citing *Hurtado v. Sup. Ct.*, 11 Cal. 3d 574, 580 (1974)) (emphasis in *Marsh*).

If each jurisdiction has a legitimate interest in having its law applied, there is a true conflict. That triggers the third step of the analysis, which requires the Court to (1) "carefully evaluate[] and compare[] the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state" and (2) apply the law of the state whose interest would be more impaired. *McCann*, 48 Cal. 4th at 97 (internal quotations and citations omitted). The Court does not consider which state has the "better or worthier rule, but rather [decides] – in light of the legal question at issue and the relevant state interests at stake – which jurisdiction should be allocated the predominating lawmaking power under the circumstances[.]" *Id.*

As a preliminary matter, the Court concludes Moving Defendants' "mix and match" argument, based on *Swanson v. Marley-Wylain Company,* is not persuasive. 65 Cal. App. 5th 1007, 1015 (2021). In *Swanson*, the trial court applied the law of a different jurisdiction to the element of causation in the analysis of substantive liability, and the Court of Appeal reversed. *Id.* The Court has determined it will apply Wisconsin law to establish whether the Moving Defendants are liable to Plaintiffs on their product liability and negligence claims. A finding of liability on those claims is a predicate to liability on the wrongful death claim. *See* Wis. Stat. § 895.03; *cf. Norgart v. Upjohn*, 21 Cal. 4th 383, 404 (1999) (elements of a claim for wrongful death are "(1) a "wrongful act or neglect" on the part of one or more persons that (2) "cause[s]" (3) the "death of [another] person") (citing Code Civ. Proc. § 377.60). Plaintiffs will not be mixing and matching the elements needed to establish that the Moving Defendants are liable for Plaintiffs' injuries. The issue before the Court is whether California's more liberal laws on damages should apply if liability is established. *See, e.g., Hurtado*, 11 Cal. 3d at 583-84.

A.  **Compensatory Damages for Wrongful Death.**

The Court has determined there are material differences between California and Wisconsin law regarding damages in wrongful death claims. *Kelley I*, 2022 WL 2356988, at *3. In the second step of the government interest analysis, the Court examines the policy interests implicated by the pertinent law: here, wrongful death. That claim implicates three "primarily local" interests. *Hurtado*, 11 Cal. 3d at 584. First, "[a] state's interest in providing compensation and in

3

determining the distribution of the proceeds[.]" *Id.*  Second, a state's interest in deterring wrongful conduct "to all persons present within its borders." *Id.*  Third, and finally, a state's interest in limiting recoverable damages. *Id.*  In *Hurtado,* the court explained the *creation* of a cause of action for wrongful death reflects a state's interest in compensating its residents. *Id.*  Wisconsin and California each have created causes of action for wrongful death. Thus, as in *Hurtado*, the parties' dispute here "revolves about the choice of an appropriate rule of decision on the issue of the proper measure of damages; there is no contention that plaintiffs are not entitled under the applicable rules of decision to some recovery in wrongful death." *Id.* at 583.

The parties each have valid arguments about which jurisdiction is the "epicenter" of the litigation and although the location of the accident is not dispositive, it remains relevant because the last action necessary to establish liability occurred in Wisconsin. *Kelly*, 2022 WL 2356988, at *4.  Therefore, each jurisdiction has an interest in deterring wrongful conduct within its borders. Rules that limit damages are "intended to protect defendants from large verdicts. [They are] not an attempt to limit the compensation of plaintiffs." *In re Aircrash in Bali, Indonesia*, 684 F.2d 1301, 1307 (9th Cir. 1982).

In support of their argument that Wisconsin law should apply, Moving Defendants argue the facts here are indistinguishable from the facts in *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802-04 (1980).  In that case, the court determined Mexican law should apply to the issue of damages in a case where the plaintiffs, residents of Mexico, were injured in a car crash in Mexico by California residents.  The court determined that the place of the wrong, Mexico, had the predominant interest in regulating conduct.  It also concluded that because Mexico had an interest in fostering tourism, its "interest … in application of its law limiting damages to an accident occurring within its borders resulting in injury to one of its residents caused by a nonresident defendant [was] not wholly lacking[.]" *Id.* at 804.  In contrast, the court determined California had no interest in applying its liberal damages rule in such a case. *Id.*

In *Marsh,* the plaintiffs were residents of the Netherlands and the United Kingdom, who were involved in an altercation with California residents at a hotel in Amsterdam.  Following the altercation, they sued the defendants for assault and battery, negligent hiring, and intentional and

4

negligent infliction of emotional distress. 805 F. Supp. at 1495-96. The defendants argued that Dutch law, which limited damages, should apply. The court determined that California's "deterrent interest in applying its liberal recovery rules to its own resident defendants … [extended] only to tortious conduct which occurs within California's borders." *Id.* at 1501. The only claim implicating California's deterrent interest was the plaintiffs' claim for negligent hiring. *Id.* at 1501-02. However, the court concluded that California's liberal damages law should apply to all of the plaintiffs' claims because the Netherlands had no interest in applying its rules limiting damages against non-resident defendants. *Id.* at 1500-02.

There are some similarities between this case and *Hernandez*. Plaintiffs are not California residents, and they have not named any Wisconsin residents as defendants in this case. As to the AW Defendants, California has chosen not to protect resident defendants from wrongful death damages awards. *Id.* Plaintiffs do contend that some wrongful conduct occurred within California's borders, which distinguishes this case from *Hernandez*. Following the reasoning set forth in *Hurtado* and in *Marsh*, the Court concludes that Wisconsin would neither have an interest in applying its damages rule to limit damages for non-resident defendants nor to reduce its residents' recovery. *Hurtado,* 11 Cal. 3d at 586-87; *Marsh*, 805 F. Supp. at 1498 ("[F]oreign states are generally presumed to have absolutely no interest in reducing recovery by their residents against non-resident tortfeasors."); *cf. Lornson v. Siddiqui*, 302 Wis. 2d 519, 556, 735 N.W.2d 55, 73 (2007) ("A wrongful death cause of action belongs to the beneficiaries and is designed to compensate for the loss of the relational interest existing between the beneficiaries and the decedent.") (internal citations and quotations omitted).

Accordingly, the Court concludes the Moving Defendants have not shown there is a compelling interest to displace California law on compensatory damages for Plaintiffs' wrongful death claim and DENIES the motion, in part.

**B.    Joint and Several Liability.**

Wisconsin and California law also differ in the application of joint and several liability. Pursuant to Civil Code section 1431.2(a), "in any action for personal injury … or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic

5

damages shall be several only and shall not be joint" and shall be allocated "in direct proportion to [a] defendant's percentage of fault." In contrast, in Wisconsin, a defendant can be held jointly and severally liable only when that defendant's causal liability is 51% or greater. Wis. Stat. Ann. §§ 895.045(1), (3).

The Moving Defendants argue that if California law applies, the fact-finder will be prevented "from considering the proportionate fault of" absent parties, who cannot be brought before the Court, "for purposes of reducing the percentage of damages payable." (Mot. at 15:20-23.) This, they argue, would impair California's interest in limiting damages payable by resident defendants. Section 1431.2 codifies Proposition 51, which "modified the traditional, common law 'joint and several liability' doctrine[.]" *Evangelatos v. Sup. Ct.*, 44 Cal. 3d 1188, 1192 (1988). The purpose of this change is set forth in Civil Code section 1431.1:

> The legal doctrine of joint and several liability, also known as "the deep pocket rule", has resulted in a system of inequity and injustice that has threatened financial bankruptcy of local governments, other public agencies, private individuals and businesses and has resulted in higher prices for goods and services to the public and in higher taxes to the taxpayers.
>
> … Some governmental and private defendants are perceived to have substantial financial resources or insurance coverage and have thus been included in lawsuits even though there was little or no basis for finding them at fault. Under joint and several liability, if they are found to share even a fraction of the fault, they often are held financially liable for all the damage. The People--taxpayers and consumers alike--ultimately pay for these lawsuits in the form of higher taxes, higher prices and higher insurance premiums.
>
> …
>
> Therefore, the People of the State of California declare that to remedy these inequities, defendants in tort actions shall be held financially liable in closer proportion to their degree of fault. To treat them differently is unfair and inequitable.
>
> The People of the State of California further declare that reforms in the liability laws in tort actions are necessary and proper to avoid catastrophic economic consequences for state and local governmental bodies as well as private individuals and businesses.

Cal. Civ. Code § 1431.1.

As evidenced by Section 1431.1, the interests implicated by the law of joint and several liability differ from the interests implicated by rules relating to the laws of wrongful death and

6

compensatory damages. The doctrine of joint and several liability, "at least in the concurrent tortfeasor context," does not merely limit the damages that a defendant may be required to pay; it addresses the measure of a defendant's causal responsibility for a plaintiff's injury. *Am. Motorcycle Assn. v. Sup. Ct.,* 20 Cal. 3d 578, 587 (1978). For the reasons articulated in its Order concluding Wisconsin law will apply to the product liability claims, the Court concludes Wisconsin's interests predominate on this issue.[2] *Kelly I,* 2022 WL 2356988, at *3-4; *see also Browne*, 504 F. Supp. at 518-19.

C. **Punitive Damages.**

Finally, the Moving Defendants argue the Court should apply Wisconsin law to the issue of punitive damages. They do not suggest the standard for awarding punitive damages under Wisconsin law is materially different from California law. However, unlike California, Wisconsin does place caps on the amount of punitive damages that can be awarded. *Compare* Wis. Stat. § 895.043(6) *with* Cal. Civ. Code § 3294. "Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-67 (1981); *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 569 (1996) (punitive damages serve a state's "legitimate interest in punishing wrongful conduct and deterring its repetition"). Wrongful conduct occurred in Wisconsin and in California. Therefore, both jurisdictions have an interest in seeing their law applied. However, because the last act giving rise to liability occurred in Wisconsin, and because punitive damages are not intended as compensation, the Court concludes Wisconsin's interest in having its law predominates. *See Kelley I*, 2022 WL 2356988, at *3-*4.

---

[2] The absent parties in this case, Colton Treu and John Stender, cannot be brought before this Court because they are not subject to personal jurisdiction. Plaintiffs argue the Moving Defendants "could conceivably seek to identify [Treu and Stender] on the verdict form and attempt to limit joint and several liability as against negligent tortfeasors for non-economic damages." (Opp. Br. at 13:6-9.) The authority on which Plaintiffs rely, *Wimberly v. Derby Cycle Corporation*, suggests imposition of several liability would be appropriate when claims for strict liability and negligence and multiple tortfeasors are involved. 56 Cal. App. 4th 618, 633 n.9 (1997). However, *Wimberly* does not support Plaintiffs' proposed remedy for the problem of absent tortfeasors.

7

**CONCLUSION**

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, the AW Defendants' motion to apply Wisconsin law.

**IT IS SO ORDERED**.

Dated: May 18, 2023

_____
JEFFREY S. WHITE
United States District Judge